UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANTOSH SINGH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF WEEHAWKEN, *et al.*,<br><br>Defendants. | <u>Civil Action No. 2:15-cv-03478-SRC-CLW</u><br><br><u>OPINION</u> |

I. <u>Introduction</u>

This matter is before the Court on the motion of plaintiffs Santosh Singh, the Estate of Virendra Singh, 63-65 Chestnut, LLC and Sandalwood Holdings, LLC ("Plaintiffs") seeking leave to file an amended/supplemental complaint (ECF No. 169). The motion is fully briefed and has been referred to the undersigned by the Honorable Stanley R. Chesler. The Court has carefully considered the parties' submissions and decides the matter without oral argument per FED. R. CIV. P. 78(b) and Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' motion is **DENIED**.

II. <u>Background</u>

Plaintiffs filed this case in 2015, alleging, *inter alia*, RICO and Fourteenth Amendment violations. *See generally* ECF No. 1. The matter's alleged factual history is long and sordid, and a full recitation is not necessary for resolution of the instant motion. Briefly stated, Plaintiffs contend that in the wake of Superstorm Sandy in 2012, defendants Giovanni D. Ahmad, Shaun D. Masterson, Frank Tattoli, Richard F. Turner, and Richard P. Venino, all officials of defendant the Township of Weehawken (collectively, "Defendants"), proceeded to

> harass, intimidate, retaliate against, and extort the Singhs—two elderly immigrants from India and long-time residents of Weehawken—over a period of over two years with the purpose of

> forcing them to provide Edward Devaney ("Ed Devaney") and Chris Devaney, two brothers who are family members of and personal friends with several Weehawken officials, police officers and employees, with practically free housing in a privately-owned, newly renovated apartment owned by Plaintiffs.

*See id.* at ¶ 1.

In August 2019, Judge Chesler granted Defendants summary judgment on three of Plaintiffs' thirteen causes of action and permitted the remaining claims to proceed. *See* ECF No. 125. The Court conducted a final pretrial conference in July 2020 and entered a final pretrial order in September 2020. *See* ECF No. 146. In late 2020 and early 2021, the parties briefed, and Judge Chesler ruled upon, various motions *in limine*. *See* ECF No. 150-60, 164-65.

In February 2022, Plaintiffs alerted the Court that "beginning in September 2021 and continuing through [February 2022], the . . . Defendants in this action have engaged in further concerted efforts to violate Plaintiffs' constitutional rights", thus warranting an updated pleading. *See* ECF No. 166. As with the original allegations, a full recitation of those triggering the proposed amendment is beyond the present scope. As summarized in Plaintiffs' moving brief,[1] again in the wake of a natural disaster — this time Hurricane Ida in August and September 2021 — Defendants, "in keeping with the *modus operandi* of their conspiracy, seized upon this storm to abuse and harass [plaintiff Santosh] Singh [("Santosh")[2]], literally kicked her out of her home and forced her out of town and then ordered the demolition of her home." ECF No. 169-1 at 2-3.

Plaintiffs detail an alleged scheme centering on purportedly bogus vacate and demolition orders issued for Plaintiffs' property (and, notably, not issued to any adjoining properties).

---

[1] The foregoing alleged facts track the proposed amended complaint, *see* ECF No. 169-4 at ¶¶ 197-263, and are assumed true for purposes of this motion.

[2] Plaintiff Virendra Singh passed away during the pendency of this action.

2

Santosh promptly appealed the orders to the Hudson County Board of Appeals. At a public meeting held in October 2021, "[a]fter realizing that Defendants could not provide any valid grounds for the issuance of the orders, [defendant] Mayor Turner suddenly interjected himself during the meeting and made an astonishing unilateral decision on behalf of the Board, which completely reversed course as to Defendants' vacate and demolition orders." Although Mayor Turner promised certain remedial measures to Plaintiffs' property, no such repairs were ever made. Santosh has not returned to her property, being "fearful for her safety and of further harassment by Defendants." *See generally* ECF No. 169-1 at 2-11.

Notwithstanding the Mayor's determination that Santosh and her tenants could return to the property, Santosh's appeal remained unresolved, and therefore, the orders remained (and still remain) in place. In February 2022, Santosh provided Defendants with a proposed order dismissing the pending appeal; Defendants did not respond. In March 2022, shortly after advising the Court of the above, Santosh again sought resolution of the appeal and Defendants again refused. *See id.* at 11-12.

The instant motion followed later that month. In support of it, Plaintiffs state that

> [a]s a result of Defendants' baseless orders, despite Defendants' unilateral permission to Singh to return to her property, the value of [Plaintiffs' property has] naturally been significantly reduced -- it goes without saying that any property that is subject to a demolition order that Defendants refuse to vacate has little to no value. . . . In short, Defendant[s], via [their] recent actions, have successfully destroyed the economic value of Singh's properties.

*See id.*[3]

---

[3] The Court administratively terminated Plaintiffs' motion pending mediation and reinstated it after those efforts failed to resolve the matter. *See* ECF No. 180-83.

### III. Legal Standards

#### a. Rule 16

"Where, as here, the motion [to amend] was filed after the deadline set by the Court,[4] the movant must satisfy the requirements of Rule 16 before the Court will turn to Rule 15." *Karlo v. Pittsburgh Glass Works, LLC*, 2011 U.S. Dist. LEXIS 125667, at *9 (W.D. Pa. Oct. 31, 2011). Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." For purposes of Rule 16, "[a] finding of good cause depends on the diligence of the moving party. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." *Globespanvirata, Inc. v. Tex. Instruments, Inc.*, 2005 U.S. Dist. LEXIS 16348, at *9-10 (D.N.J. July 11, 2005) (quoting *Rent-A-Center v. Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003) and citing FED. R. CIV. P. 16 advisory committee's note ("The court may modify the schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension.")).

#### b. Rule 15

Plaintiffs' motion proceeds under FED. R. CIV. P. 15(a)(2) and 15(d). The former provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The "three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend [are] when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016) (quoting *U.S. ex rel. Schumann v. Astrazeneca Pharm.*

---

[4] The most recent deadline for amended pleadings was March 2016. *See* ECF No. 30 at ¶ 3.

4

*L.P.*, 769 F.3d 837, 849 (3d Cir. 2014)). Under the latter, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d).

Because "Plaintiffs seek to amend their complaint to include events . . . which occurred after they filed the initial Complaint[ . . . ], the Court will construe the motion to amend as a motion to supplement the pleadings pursuant to Rule 15(d) of the Federal Rules of Civil Procedure." *See Vares-Ebert v. Twp. of Hamilton*, 2020 U.S. Dist. LEXIS 33378, at *5 (D.N.J. Feb. 27, 2020). "The standard under Rule 15(d) is essentially the same as that under Rule 15(a), and leave to supplement should be granted unless it causes undue delay or undue prejudice." *Id.* (quoting *Vernon v. Custer*, 2014 U.S. Dist. LEXIS 51526, at *5 (M.D. Pa. Apr. 15, 2014); quotation marks omitted).

IV.  **Analysis**

    a. **Rule 16**

This matter's Rule 16 good cause analysis is straightforward. As noted above, the alleged events giving rise to Plaintiffs' proposed supplemental pleading occurred between September 2021 and March 2022. Plainly, no measure of diligence could have allowed Plaintiffs to meet an amended pleading deadline that passed several years earlier. And, shortly after the alleged recent course of events, Plaintiffs advised the Court of the need for a revised complaint and filed their motion promptly thereafter. Under these facts, it can hardly be disputed that Plaintiffs were diligent in seeking supplementation. *See, e.g.*, *Huber Engineered Woods LLC v. La.-Pacific Corp.*, 2022 U.S. Dist. LEXIS 238372, at *45 (D. Del. Nov. 17, 2022) ("HEW's proposed supplementation is also appropriate under the good cause standard of Rule 16(b)(4). HEW added

5

its direct infringement theory . . . promptly after it learned of LP's activities . . . ."). The Court therefore finds Rule 16 satisfied and proceeds to the Rule 15 analysis.

### b. Rule 15

The crux of Defendants' Rule 15 argument is that granting Plaintiffs' motion would prejudice them by requiring additional and costly discovery pertaining to Plaintiffs' proposed supplemental claims which raise new facts and theories of liability.[5] On such matters, the Third Circuit instructs that

> substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend. The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted. Specifically, we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.

*Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted). Accordingly, courts assessing prejudice arguments in opposition to a motion to amend "should analyze whether amendment would cause burdensome new discovery or trial preparation." *Serfess v. Equifax Credit Info. Servs.*, 2014 U.S. Dist. LEXIS 120138, at *14 (D.N.J. Aug. 28, 2014) (citing *Cureton*, 252 F.3d at 275-76).[6] The Court finds that sufficient prejudice exists here to mandate denial of Plaintiffs' motion.

---

[5] Defendants also passingly raise a delay argument, which can be disposed of summarily. "The question of undue delay . . . requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier". *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). As discussed, considering the timing of events asserted in the proposed amended pleading, Plaintiffs could not possibly have amended their complaint earlier.

[6] As with amended pleadings, "[a] Court also may deny a supplemental complaint 'when it would raise new issues and unduly delay resolution of the case.'" *See Planker v. Christie*, 2018 U.S. Dist. LEXIS 166259, at *7 (D.N.J. Sep. 27, 2018) (quoting *Love v. N.J. Dep't of Corr.*, 2017 U.S. Dist. LEXIS 155076, at *8 (D.N.J. Sept. 22, 2017)).

Three factors drive this conclusion. First is the scope of discovery the supplements would entail. Plaintiffs propose to add extensive factual allegations spanning more than sixty-five paragraphs and detailing an alleged course of events occurring over several months and involving numerous party and non-party individuals. It is simply impossible to avoid the reality that discovery into these matters will involve significant and burdensome time and cost expenditures and force the parties to engage in what will almost certainly be a yearslong course of proceedings, in turn requiring that Plaintiffs' motion be denied on prejudice grounds. *See, e.g.*, *Cureton*, 252 F.3d at 275-76 (denying motion to amend because "if amendment were permitted, the [defendant] would be prejudiced by having to engage in burdensome new discovery and significant new trial preparation"); *Smart Pharmacy, Inc. v. Medco Health Sols., Inc.*, 2014 U.S. Dist. LEXIS 102832, at *11 (D.N.J. July 29, 2014) ("The Court finds that countless discovery issues would result by virtue of the amendment . . . . As such, the Court finds that the proposed amendment would unduly prejudice [defendant], and must be denied.").

The second salient factor is that, although Plaintiffs' proposed supplements involve many of the same characters and the same alleged "*modus operandi*" as in the original complaint, the new allegations concern a set of facts completely distinct from those raised in the first pleading. While supplemental pleadings generally tend to "promote[] judicial economy by permitting the court to deal with the entire dispute at once, rather than in piecemeal fashion", *Glenside W. Corp. v. Exxon Co., U.S.A., Div. of Exxon Corp.*, 761 F. Supp. 1118, 1134 (D.N.J. 1991) (citing *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 668 F. Supp. 906, 923 (D. Del. 1987)), this is not a case where denying supplementation will result in a single dispute being dealt with piecemeal. It will instead mean that a course of allegations detached from (and arising almost ten years after) those

originally asserted will be considered in a separate lawsuit,[7] an eminently sensible result. *See, e.g.*, *Conroy v. Centurion*, 2021 U.S. Dist. LEXIS 248040, at *13 (D. Ariz. Dec. 30, 2021) (recommending denial of motion to amend in part because "Plaintiff will not be prejudiced if his motion to amend is denied and he must file a separate lawsuit to pursue his new claims. If the motion to amend were to be granted, this matter would be substantially delayed and become much more complex procedurally and otherwise."), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 63287; *compare, e.g.*, *Owens v. Welch*, 2009 U.S. Dist. LEXIS 37939, at *3 (W.D. Ark. May 1, 2009) ("The Court finds no basis for plaintiff to interject an entirely new set of unrelated allegations into this case, and the Motion To Amend will be denied, although this denial is without prejudice to plaintiff's right to file a separate suit on the allegations of the Motion To Amend, should he so desire.")[8] *with Jones v. Clinton*, 869 F. Supp. 690, 699 (E.D. Ark. 1994) ("Because there is too much interdependency of events and testimony to proceed piecemeal, the allegations against the trooper will be tried at the same time as those against the President. His case is integrally related to the allegations against the President; both cases arose out of the same alleged incident; and . . . it would not be possible to try the Trooper adequately without testimony from the President.").

    Finally, this case is nearly eight years old and many of the alleged facts underlying it occurred over a decade ago. And — a final pretrial order having been entered and motions *in limine* having been decided some two years ago — the case is abundantly trial ready. To upend the considerable discovery and pretrial efforts spanning nearly the past ten years would

---

[7] Without deciding this issue as a matter of law, the Court notes that any claims arising from Plaintiffs' proposed supplemental allegations appear to be well within their relevant limitations periods.

[8] For the avoidance of doubt, nothing in the instant decision precludes Plaintiffs from filing a separate lawsuit premised upon the allegations proposed to be added here.

constitute an unjustifiable burden upon both Defendants and the Court. *See Anastasia v. N.J. Div. of Youth & Family Servs.*, 2005 U.S. Dist. LEXIS 33388, at *18 (D.N.J. July 5, 2005) **(Chesler, J.)** ("The Court's interest in judicial economy prevents allowing an amendment which would place an unwarranted burden on the Court.").

As stated by the Ninth Circuit in *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011), "[a]t some point, litigation must come to an end. That point has now been reached." *Id.* at 1042; *see, e.g.*, *Hudson v. Univ. of Tex. Med. Branch*, 2009 U.S. Dist. LEXIS 38204, at *5 (S.D. Tex. May 6, 2009) ("This lawsuit has been pending for some time. Adding a claim of excessive force to this lawsuit would . . . delay the proceedings. Plaintiff's motion to amend is denied without prejudice. Plaintiff can file a separate lawsuit . . . alleging excessive force.") (citation omitted); *United States ex rel. Walker v. R & F Props. of Lake Cty., Inc.*, 2008 U.S. Dist. LEXIS 29174, at *11, 13 (M.D. Fla. Apr. 9, 2008) ("[A]llowing an amendment of the Complaint after the close of the discovery period and only months before the trial would result in the need to completely re-open discovery and inevitably would result in a further delay of the disposition of a case that has been pending for six years. . . . All good things must come to an end - and this case is one of them.") (quotation marks omitted). As in these matters, fairness and judicial economy dictate that the present suit be brought to resolution and that any claims arising from the recent course of alleged events be litigated independently.

## V.     Conclusion

For the reasons stated, Plaintiffs' motion to file an amended or supplemental complaint is denied. An appropriate Order follows.

Dated: March 15, 2023

                                                                                */s/ Cathy L. Waldor*
                                                                                Cathy L. Waldor, U.S.M.J.

9